## WESTERN UNION TELEGRAPH CO. v. SHOWERS.

[73 South. 276 Division B.]

1. COMMERCE. *Exclusive power of congress. Interstate Commerce Commission authority. Evidence. Presumption. Compliance with law. Telegraphs. Action for failure to deliver. Damages for mental suffering. Punitive damages. Federal law.*

By Act of Congress, June 8, 1910, chapter 309, 36 Stat. 539, amending Interstate Commerce Act, Feb. 4, 1887, chapter 104, 24 Stat. 379, making telegraph companies common carriers within the meaning and subject to the provisions of the interstate commerce act, congress has taken possession of the field of interstate commerce by telegraph, and it results that the power of the state to legislate with reference thereto has been suspended.

2. INTERSTATE COMMERCE. *Commission. Authority.*

As to whether a stipulation on a telegraph blank limiting the telegraph company's liability to fifty dollars, in the absence of greater expressed valuation of the message, is reasonable or unreasonable, valid or void, is a matter to be determined by the Interstate Commerce Commission and not by the state courts and even if such stipulation ought to be unenforceable, nevertheless the state courts cannot so decide it.

3. EVIDENCE. *Presumption. Compliance with law.*

Where there is no evidence to the contrary, the presumption is that an interstate carrier has complied with the federal laws.

4. INTERSTATE COMMERCE. *Telegraphs. Action for failure to deliver. Damages for mental suffering.*

Since Congress has assumed control of interstate telegraph business by Act Cong. June 18th., 1910, amending interstate commerce Act Feb. 4th, 1887, making telegraph companies common carriers within the act, the federal rule denying recovery for damages for mental suffering, alone governs in suits for damages from delay in delivering an interstate telegram.

5. TELEGRAPH. *Telephones. Punitive damages. Federal law.*

Under the Federal Rule the master is not liable for punitive damages unless he participates in the wanton or malicious act of his servant or agent or subsequently ratifies it and this rule applies in a suit for damages from delay in delivering an interstate telegram.

Appeal from the circuit court of Coahoma county.

Hon. W. A. Alcorn, Jr., Judge.

Suit by H. H. Showers against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. B. Harris,* for appellant.

Prior to the passage of the Act of Congress of June 18, 1910, Congress had not legislated or acted in any way in reference to interstate telegraphic communications although it had long been held that the interstate telegraphic business was interstate commerce.

In the case of the *Western Union Telegraph Co.* v. *Texas,* 105 U. S. 460, the supreme court of the United States said: "The telegraph company occupies the same relation to commerce as a carrier of messages that the railroad company does as the carrier of goods. Both companies are instruments of commerce, and their business is commerce itself."

The court is familiar with the numerous cases on this point. See: *Pensacola Tel. Co.* v. *Western Union Tel. Co.,* 96 U. S. 1; *Western Union Tel. Co.* v. *Pembleton,* 122 U. S. 347; *Leloup* v. *Port of Mobile,* 127 U. S. 406; *Western Union Tel. Co.* v. *Commercial Milling Co.,* 118 U. S. 406; *Western Union Tel. Co.* v. *Crovo,* 220 U. S. 304; *Western Union Tel. Co.* v. *Brown,* 234 U. S. 542.

In the case of *Jones* v. *Express Co.,* 61 So. at page 165, the question before this court was the validity of a stipulation in an express receipt limiting the liability of the company to fifty dollars. The court cited the case of *Express Co.* v. *Croniger, supra* and the case of *Railroad Co.* v. *Miller*—U. S. 513, 27 Law Ed. page 323, holding that on interstate shipments the Act of Congress was exclusive of all state statutes or policies, and the decisions of that court were the supreme law in reference to contracts of similar import. See, also the cases of,

*Express Co.* v. *Burke & McGuire,* 61 So. 312; *Railroad Co.* v. *Woodruff,* 62 So. 171.

In addition to the Federal cases above cited on the question as to the effect of the action by Congress, we cited the following cases: *Northern Pac. R. R.* v. *Washington,* 222 U. S. 307; *So. Ry. Co.* v. *Reid,* 22 U. S. 424; *Mondou* v. *R. R. Co.,* 223 U. S. 1; in which the court held that the Federal Employers' Liability superseded all state regulations and all common-law rules laid down by the states on that subject. *Chicago R. R. Co.* v. *Elevator Co.,* 226 U. S. 426; *New York Central R. R. Co.* v. *Hudson Co.,* 227 U. S. 249; *St. Louis R. R. Co.* v. *Edwards,* 227 U. S. 265; *Boston & Maine R. R. Co.* v. *New York,* 233 U. S. 671.

These cases touch upon various subjects upon which Congress has acted and all hold that action by Congress preempts and occupies the entire field to the exclusion of all state regulations, statutes, policies, and common-law rules.

In the case of *Western Union Tel. Co.* v. *Bilisoly,* 116 Va. 562, it was held that by the Act of Congress, approved June 18, 1910, telegraph companies so far as interstate business is concerned have been placed under the direct supervision of the Interstate Commerce Commission and are subject so far as applicable to the same rules, regulations, restrictions and penalties as imposed upon common carriers. This act has occupied the entire field and taken complete control of the regulation of telegraph companies, and while it has impliedly exempted them from any penalty for negligence, it has provided a severe maximum penalty for intentional discrimination. Before the passage of this Act there had been no legislation by Congress affecting or conflicting with the state statute imposing a penalty for failure to deliver messages promptly, and therefore state statutes affecting telegraph companies were upheld even as to interstate messages upon the ground that until Congress had legislated upon the subject of telegraph companies the state stat-

utes were applicable, citing the *James Case*, 126 U. S. 650; *Commercial Milling Co. Case*, 218 U. S. 406; *Crovo Case*, 220 U. S. 364, and others.

Further the court held, that even if the plaintiff's case was based on an unreasonable regulation, it is a question which cannot be determined primarily in the court. The question must be first raised before the Interstate Commerce Commission, citing *Railroad Co.* v. *Abilene Cotton Co.*, 204 U. S. 426; 51 Law Ed., 553; *Baltimore R. R. Co.* v. *U. S.*, 215 U. S. 481; 54 Law Ed., 292.

In the case of *Gardner* v. *Western Union Tel Co.*, decided by the United States circuit court of appeals for the eighth circuit, reported in Advanced Sheets, 231 Fed., the court held that by virtue of the amendment of June 18, 1910, Congress had not only taken possession of the field of interstate commerce by telegram, but had also specifically prescribed rules which shall govern the transactions of such commerce. This case is an instructive one, and cites the Bilisoly case, above referred to, and numerous state cases bearing on the subject. See, *Western Union Tel. Co.* v. *National Bank of Berryville*, 83 S. E. 224.

This case followed the *Bilisoly Case, supra.* The case of *Dodge* v. *Express Co.*, 54 Pa. Super. Ct., 222; *Ridge* v. *Erie R. R. Co.*, 54 Pa, Super. Ct., 602, are both cases upholding the valuation clause in receipts and bills of lading. See, also, *Strauss Gas and Oil Co.* v. *Tel. Co.*, 59 Pa. Super. Ct., 124.

In *Western Union Tel. Co.* v. *Compton*, 169 S. W. (Ark.), 946, the court upheld the valued message clause in the telegraph blank. *Western Union Tel. Co.* v. *Johnson*, 171 S. W. (Ark.) 859, and *Western Union Tel. Co.* v. *Simpson*, 174 S. W. (Ark.), 232, the court held that mental anguish could not be recovered on an interstate message.

It is the established rule in the Federal courts that the stipulation as to value is not a stipulation relieving the company from liability for negligence. In the case of

*Hart* v. *Pa. R. R. Co.*, 112 U. S. 276, 28 Law Ed., page 717, the court says: ''The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence to that value. It is just and reasonable that such a contract, fairly entered into and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss.''

This case was referred to with approval in the case of *Express Co.* v. *Croninger, supra.* See, also, the case of *Boston & Maine Railroad Co.* v. *Hooker*, 233 U. S. 671, 58 Law Ed. 875; *R. R. Co.* v. *Harriman Bros.*, 227 U. S. 672, 57 Law Ed. 690; *Chicago R. R. Co.* v. *Miller*, 227 U. S. 57, Law Ed. 323.

The authorities above cited established beyond question, we submit the following propositions: First, that the stipulation as to the repeated and unrepeated messages has been expressly and specifically declared to be reasonable and authorized by express Act of Congress, and it is, therefore, not an open question for discussion by this court or any other.

Second, that the regulation or stipulation in regard to the valuation of the message is a reasonable regulation, and is binding and enforceable, although the act occasioning the loss is a negligent one, and here we desire to call the court's attention to the fact that it is immaterial

whether the act is characterized as gross negligence, or simply negligence, because no distinction exists, and there are no degree of negligence in the Federal courts. See, *Railroad Co.* v. *Arms,* 91 U. S. 489, 23 Law Ed. 374, *The New World* v. *King,* 16 How. 469, 14 Law Ed. 1019; *Kelly* v. *Marlot,* 135 Fed. 74; *Purple* v. *Union Pac., R. R. Co.,* 114 Fed. 123.

Third, in any event, the question of the reasonableness or unreasonableness of the stipulation is a matter for the determination of the Interstate Commerce Commission and cannot be raised in the first instance in the state of Federal courts.

See, *Telegraph Co,* v. *Bank of Spencer, supra; Telegraph Co.* v. *Williams, supra; Haskell Implement & Seed Co.* v. *Tel. Co. supra* (conclusion of opinion).

We have brought into view the authorities above cited, because they bear directly upon the question as to the correctness of the court's ruling in overruling the demurrer to the special pleas.

*Cutrer & Johnston,* for appellee.

It is true that Congress has undertaken to assume control of the regulations of contracts between telegraph companies and the public under the terms of the Carmack Amendment, as stated in the act of June 18, 1910, but it is also true that the defendant has not filed its rates and tariffs, rules and regulations, with the Interstate Commerce Commission. It is also true that the rules and regulations of the defendant are not binding upon the public, and certainly not upon the plaintiff unless they are filed with the Interstate Commerce Commission, as required by law.

It is also true that no regulations of the defendant limiting liability are binding, unless they are made binding under the provisions of the Carmack Amendment to the Interstate Commerce Act, which law alone undertakes to set out a measure of liability to cover con-

tracts between the telegraph companies and the public.

The mere fact that Congress has authorized the Interstate Commerce Commission to consider the classifications of telegrams into day and night, repeated and unrepeated, letter and commercial telegrams, does not operate of its own force, to put such rules and regulations into effect.

It is contended by the defendant that the telegraph company was not required to file its schedules of charges, etc., with the Interstate Commerce Commission, and counsel argues the case for the defendant on that theory, but that particular matter has been authoritively settled by a construction of the act, as applied to telegraph companies, in the case of *Gardner* v. *Western Union Telegraph Company,* United States circuit court of appeals, eighth circuit, decided February 28, 1916, in 231 Federal Reporter, page 405.

Upon that point, the court announced the rule to be as follows: ''Pertinent to this contention, sections 1, 2, 6, 12, and 15, of the act to regulate commerce as amended, are cited. We cannot repeat these sections here, but it appears beyond question therefrom that, in so far as the provisions of the act to regulate commerce are applicable it applies to all interstate telegraph business; that as to all interstate business telegraph, telephone, and cable companies are common carriers within the meaning and purpose of the act; that as to their interstate business telegraph companies must print and publish their rates, rules, classifications, regulations and practices, and file same with the Interstate Commerce Commission; that they shall establish reasonable rates, rules, regulations, and practices, but messages may be classified into day, night, repeated, unrepeated, and such other classes as are just and reasonable, and different rates may be charged therefor; that all rates, regulations, and practices must be reasonable and just; that penalties are imposed for any attempt to evade the published rates, rules, practices, or regulations.''

In this case, the alleged contract was said to be operative because the proof showed the schedules had been filed with the Interstate Commerce Commission as required by law, and the proof affirmatively shows in this case, that had not been done.

It has been held by a long list of authorities, beginning with the case of *Adams Express Company* v. *Croninger,* 226 U. S. 491, 57 L. E. 314, that by the Carmack Amendment, the Congress assumed control of Interstate Commerce carried on by transportation companies, as well as by telephone, telegraph and cable companies, and that it was lawful for such companies to make contracts in writing limiting their liability, where the limitation was based upon a consideration, but that the contract had to be evidenced by some writing issued by the interstate agency. The theory upon which the court proceeded in all these cases, was and is that if the shipper had affirmatively fixed a valuation upon the property to be transported, and if the rate was based upon the value, the shipper was estopped to make or assert a claim for greater value in the event of loss or destruction of the article which might be the subject-matter of the contract.

It was further decided in all these cases, that the rule did not apply unless the schedules had been filed with the Interstate Commerce Commission as required by law.

The supreme court of the United States has never gone further than to say that if the schedules, rules and regulations are on file as required by the Act of Congress, knowledge of the contents thereof will be imputed to the parties delivering the commodities or sending the message, and that in any event, some writing must be given by the carrier or telegraph company to the sender to evidence the contract. On these several matters, we refer to the following cases: *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 57 L. E. 314; *Chicago, St. P. M. & O. Ry. Co.* v. *Latta,* 226 U. S. 519, 57 L. E. 328; *Wells Fargo & Co.* v. *Neiman-Marcus Co.,* 227 U. S. 469, 57 L. E. 600; *K. C. S. Ry. Co.* v. *Carl,* 227 U. S. 639; 57

57 L. E. 600; *K. C. S. Ry. Co.* v. *Carl,* 227 U. S. 639; 57 L. E. 683; *M. K. & T. Ry. Co.* v. *Harriman Bros.,* 227 U. S. 657, 57 L. E. 690; *C. B. & Q. Ry.* v. *Miller,* 226 U. S. 513, 57 L. E. 323; *St. L. I. M. & S. Ry. Co.* v. *Edwards,* 227 U. S. 265, 57 L. E. 506; *S. T. & S. F. Ry. Co.* v. *Robinson,* 233 U. S. 173, 58 L. E. 901. The case which has made the announcement last above stated, is that of *Boston & Maine Railroad Co.* v. *Hooker,* 233 U. S. 97, 58 L. E. 868.

It would seem, therefore, that no sort of an engagement was made by the plaintiff with the defendant to limit the liability of the defendant for its negligence, either express or imputed by law, and, therefore, the defendant stands liable for the consequence of its negligence.

It is said that the court authorized the recovery of punitory damages, and damages for mental suffering, and that this could not be done under the rule announced by the supreme court of the United States regarding recoveries of losses suffered on interstate commerce transactions by rail and telegraph.

There has never been any restriction sought to be imposed by congress upon recoveries in the several states, for damages growing out of torts. The law of the forum in each case, controls these several matters.

The common law as administered in Mississippi, is binding upon the courts of the United States as to all actions brought for injuries suffered in Mississippi. The contract with the defendant as made by the plaintiff was made by it in Mississippi, and the wrong inflicted upon the plaintiff by the defendant, was inflicted upon him in Mississippi, and the right to recovery against the defendant for the wrong is vested in the plaintiff under the law of Mississippi, and the remedy for the breach of the wrong may be resorted to and pursued in Mississippi, according to the due course of the common law as announced by the courts of Mississippi.

It will be observed in this case, that there is no sort of effort to recover for mental pain and anguish, but that the only contention made by the plaintiff in the court below and in this court, is that if the plaintiff is entitled to recover punitory damages, it may be submitted to the jury as to whether or not the annoyance and worry of the plaintiff, will be considered by the jury in fixing the amount of punitory damages. And this is according to the well-established course of the common law in Mississippi, and elsewhere. *Burke* v. *Reese,* 60 Miss. 906; 6 Thompson, Negligence (2 Ed.), sec. 7321, and cases cited. That the plaintiff in this cause has a well-established right to recover according to the course of the common law, is established by the supreme court of the United States in the case of *Western Union Telegraph Co.* v. *Commercial Milling Co.,* 218 U. S. 406, 54 L. E. 1088.

It was never intended by Congress by the passage of the Carmack Amendment, or by any other portion of the Interstate Commerce Act, to restrict the courts of the several states in the administration of the law of their several jurisdictions. The supreme court of the United States has never undertaken to condemn anything except statutes which place a direct burden on commerce, or which undertake to operate beyond the territorial limits of the states which may have adopted the several regulations which have been from time to time called in question. *Gardner* v. *Western Union Tel. Co.,* 231 Fed. 411.

Regulations imposing penalties for the nonobservance by the agencies of interstate commerce, of their obligations to the public, have been practically uniformly upheld by the supreme court of the United States. There is no requirement that there shall be uniformity of recovery in every state for the breaches of like duty, in each of the several states, but each state has determined, and may determine, these several matters for itself. *M. K. & T. R. R. Co.* v. *Cade,* 233 U. S. 642, 58 L. E. 1135; *Seaboard Air Line* v. *Cegers,* 203 U. S. 73, 52 L. E. 108; *Y. & M.*

*V. R. R. Co.* v. *Jackson Vinegar Co.,* 226 U. S. 217, 57 L. E. 193; *K. C. S. Ry.* v. *Anderson,* 233 U. S. 325, 58 L. E. 983; *Western Union Tel. Co.* v. *Crovo,* 220 U. S. 364, 55 L. E. 498; *Western Union Tel. Co.* v. *James,* 162 U. S. 650, 40 L. E. 1105; *Western Union Tel. Co.* v. *Commercial Milling Co.* 218 U. S. 406, 54 L. E. 1088; *M. K. & T. Ry. Co.* v. *Shampenois,* 61 So. 426.

There is, however, no contention in this case that there was any effort to impose any penalty on the defendant for the failure to perform its duty, nor any contention that a penalty was imposed upon the defendant for the nonperformance of its duty towards the plaintiff.

It is a well-established rule of law, that punitory damages may be awarded against corporations, as well as individuals for misconduct of various kinds and degrees. In Mississippi, punitory damages may be awarded for wilful misconduct or gross negligence tantamount to wilfulness, and it is not given to the courts of the United States to say to the courts of Mississippi what conduct will or will not justify a jury in inflicting or awarding punitory damages. The courts of the United States cannot say that an unprovoked assault by the conductor of a passenger train, upon an interstate passenger, who may sue for the wrong in the courts of Mississippi, would not warrant the infliction of punitory damages upon the carrier, because the assault had not been committed by the president or some executive officer of the carrier, nor can the courts of the United States undertake to control or correct the courts of Mississippi, in the construction and application of the common law to causes arising within the jurisdiction of the state, and which are properly cognizable by its courts.

In the case at bar, an admitted wrong was perpetrated upon the plaintiff by the defendant, and for that wrong the plaintiff is clearly entitled to relief and to secure compensation for the injuries inflicted upon him, according to the measure of damages fixed by the courts of the state and we assume that neither the courts of the United

States, nor of any other state, will undertake to regulate the courts of Mississippi may see proper to afford under relief that the circumstances presented by the case at bar.

There is a full decision of these several matters, by the Interstate Commerce Commission, in which has been collated a great many of the authorities bearing upon several questions involved in this case, in the proceeding, No. 933, styled: ''In the matter of released rates,'' 13 Interstate Commerce Reports, 550; which we contend supports throughout the argument which we are now presenting to the court.

We submit further, that unless there is a contract between the interstate carrier (railroad or telegraph), and the sender of freight or messages, the Interstate Commerce Act does not apply to limit or control the correlative rights of the parties, nor the liabilities existant as between them, either for negligent misconduct, or other legitimate cause of action, Unless there is a contract under the Carmack Amendment, the common law prevails and the courts of the United States apply their construction of the common law, as contradistinguished from the construction thereof by the several states, only as to bills of lading or other contracts made between the parties in pursuance of the Carmack Amendment. *Southern Railway* v. *Prescott,* U. S. Advance Opinions, 1916, page 469, decided April 10, 1916, No. 12; *C. N. O. & T. P. Ry. Co.* v. *Rankin,* U. S. Advance Opinions, 1916, page 55, decided May 22, 1916, No. 15.

Upon the whole case, therefore, we earnstly contend, that the judgment of the court below should be affirmed.

POTTER. J., delivered the opinion of the court.

This was a suit brought by H. H. Showers, the appellee, as plaintiff in the circuit court of Coahoma county, against the Western Union Telegraph Company, appellant, defendant in the court below. This suit was for the negligent delay of about twenty-four hours in the de-

livery of an interstate message addressed at Clarksdale, Miss., to the plaintiff's daughter at Trenton, Ky. This case was tried throughout under the common law of Mississippi as determined by decisions of this court, but should have been tried under the laws of the United States. By an act of June 18, 1910, telegraph companies have been made common carriers within the meaning and subject to the provisions of the Interstate Commerce Act. As stated by the supreme court of Oklahoma in the case of *Western Union Telegraph Co.* v. *Bank of Spencer,* 156 Pac. 1175, in speaking of this statute:

"It is apparent that Congress has undertaken to occupy the field of interstate commerce by telegraph and to assume exclusive jurisdiction and authority in the regulation thereof, and has specifically prescribed rules which govern business of this character."

In the case of *Gardner* v. *Western Union Telegraph Co.,* 231 Fed. 405, 145 C. C. A. 399 (8 C. C. A.), now found in the advance sheet of the Federal Reporter of June 8, 1916, the court of appeals says:

"Congress has taken possession of the field of interstate Commerce by telegraph and it results that the power of the state to legislate with reference thereto has been suspended."

The blank upon which the message under consideration was written contains a stipulation:

"That the company will not hold itself liable for errors or delays in transmission or delivery of unrepeated messages beyond the amount of tolls paid thereon nor in any case beyond the sum of fifty dollars, at which, unless otherwise stated below, this message has been valued by the sender thereof."

It is contended by the telegraph company that the clause limiting the liability of the telegraph company to the cost of the telegram or to fifty dollars was a valid and binding stipulation in the contract between the telegraph company and the sender of the message. On the other hand, it is the contention of the appellee in this

case that such stipulations are unreasonable and void. The telegraph company insist that the contract limiting its liability to a sum certain is analogous to the valuation placed on articles offered for shipment and a value placed thereon by the shipper. In our judgment, there is not much analogy between the two, as the value of an article offered for shipment is easily known by the shipper at the time the shipment is made, but damages likely to accrue out of an error or delay in the transmission of a message by telegraph in the very nature of things cannot be fixed with any degree of certainty beforehand. But as to whether or not this stipulation is reasonable or unreasonable, valid or void is a matter to be determined by the Interstate Commerce Commission, and not by us, and even if such stipulation ought to be unenforceable, nevertheless we cannot so declare it.

It is contended in this suit that the telegraph company had not complied with the laws of the United States and the rules of the Interstate Commerce Commission, and for that reason the stipulation is void. However, there is nothing in the pleadings or proof to show that such is the case, and it has been held in the recent case of *C., N. O. & T. P. R. R. Co.* v. *Rankin,* 241 U. S. 319, 36 Sup. Ct. 555, 60 L. Ed. 1022, that, where there is no evidence to the contrary, the presumption is that an interstate carrier has complied with the federal laws. In that case Mr. Justice McREYNOLDS said:

"It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law. Such a carrier must comply with strict requirements of the Federal statutes or become subject to heavy penalties, and in respect to transactions in the ordinary course of business it is entitled to the presumption of right conduct."

In this case we think it immaterial whether the fifty dollar limit on liability is valid or not, because under our construction of the law nothing can be recovered in

this case except actual damages, and not more than fifty dollars actual damages is established by the proof in this case. The court in this case authorized recovery not only for actual damages, but for punitive damages and for mental anguish, if the jury believed that the delay in the transmission of the message was due to wantonness, wilfulness, or gross negligence on the part of the agents of the company in handling the message. The case of *Southern Express Co.* v. *Byers,* 240 U. S. 612, 36 Sup. Ct. 410, 60 L. Ed. 825, was a suit for mental anguish, and arose out of the shipment of a coffin and grave clothes intended for the burial of plaintiff's wife, and accepted by the express company with knowledge of the fact at Asheville, N. C., for transportation to Hickory Grove, S. C. The shipment was delayed, and the plaintiff recovered a judgment for two hundred and fifty dollars in the state court for mental anguish, and this judgment was affirmed by the supreme court of North Carolina. The bill of lading in the case contained the stipulation limiting the liability to fifty dollars. The court held, notwithstanding the state rule, that damages for mental anguish alone could not be recovered under the Federal law. In other words, this being a subject of interstate commerce, the courts held that rights and liabilities of the parties must be determined by the Federal rule, and not by the statute or the common law of the state. In that case the court said:

"Manifestly the shipment was interstate commerce; and, under the settled doctrine established by our former opinions, rights and liabilities in connection therewith depend upon the acts of Congress and bill of lading and the common-law principles accepted and enforced by the Federal courts."

The Federal rule with reference to the recovery for mental anguish would apply in the case of an interstate message by telegraph, since the telegraph companies have been made common carriers by the law of the

United States and placed under the supervision of the Interstate Commerce Commission.

The Mississippi rule as to punitive damages was in voked in this case by the plaintiff, and the Mississippi rule allows damages against the master for the wanton, willful, or gross negligent conduct of a servant. Under the Federal rule the master is not liable for punitive damages unless he participates in the wanton or malicious act of his servant or agent or subsequently ratifies it. *Lake Shore R. R. Co.* v. *Prentice,* 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97. Under the law as laid down in the case of *Express Co.* v. *Byers, supra,* the Federal rule as to punitive damages applies; as the court held in that case that the rules in force under the Federal statute are the rules of the common-law "accepted and enforced by the Federal courts."

The case is therefore reversed and remanded.

*Reversed and remanded.*