WARREN-GODWIN LUMBER Co. *v.* POSTAL TELEGRAPH-CABLE COMPANY.

[77 South. 601, Division B.]

1. TELEGRAPHS AND TELEPHONES. *Stipulations as to liability. Effect.*
   A telegraph company cannot contract against its own negligence and a stipulation on the back of a telegram undertaking to exempt the telegraph company from liability for its negligence in transmitting a message, though an unrepeated one, is invalid and the company is responsible for losses occasioned by its negligence in transmission.

2. SAME.
   In such case the amount of recovery will not be limited by the amount paid for the transmission of the telegram although there was a stipulation to that effect on the back of the message.

APPEAL from the circuit court of Hinds county.
HON. W. H. POTTER, Judge.

Suit by the Warren-Godwin Lumber Company against the Postal Telegraph-Cable Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*G. E. Williams,* for appellant.

The actual damage to appellant is admitted, and in the trial of the case below appellee did not contend that under ordinary circumstances, or under the common law of the state, the facts admitted did not show liability on the part of appellee, sufficient to warrant the rendition of a judgment for appellant in the amount demanded in the declaration as damages, but appellee contended that the act of congress of June 18, 1910, had the effect of suspending and displacing state regulations and laws with reference to telegraph business. While this is not definitely shown in the record, this

was the only contention made, and on this point the court found in favor of appellee.

Since the instant case was tried in the lower court, this court has settled the question involved. In the case of *Dickerson* v. *Western Union Telegraph Co. et al.* the court, in a learned opinion by Mr. Justice ETHRIDGE, said: "Reverting to the Act of 1910, set out above what statute of the United States regulates liabilities, rights and duties between the telegraph company and its patrons? It is elementary that there is no federal common law; and that the powers of the federal government are delegated ones, and it must by statute prescribe the rules and regulations of a subject committed to its care. . . . The federal government in cases where Congress has not acted, enforces rights in matters brought before it within its jurisdiction, according to the laws of the states, but does not in all cases, follow the state court's interpretation of what the common law is. In some of the decisions—certainly the rights, duties and obligations imposed by the Act of 1910, whatever they may be, must be enforced according to the laws of the state where the cause of action originated as congress has not provided specifically what are those duties and rights, nor provided how and in what courts they should be exercised and enforced. *Dickerson* v. *Western Union Tel. Co. et al.,* 74 So. 779.

We respectfully submit that this case should be reversed and judgment entered here for the amount sued

*J. N. Flowers* and *H. C. Holden,* for appellee.

We contend that congress by the amendment of June 18, 1910, to the act to regulate commerce, took over the regulation and control of the interstate commerce of telegraph companies.

On June 18, 1910, congress amended the Interstate Commerce Act of 1887, and the said amendment made telegraph and telephone companies engaged in sending messsages from one state to another common carriers within the meaning of the amended act. (See Fed. Stat. Ann. 1912, Supp., Vol. 1., page 112.)

Among other provisions of the amendment is the following: "All charges made for any service rendered or to be rendered in the transportation of passengers or property and for transmission of messages by telegraph, telephone or cable as aforesaid, or in connection therewith, shall be just and reasonable and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful; provided, that messages by teleghaph, telephone or cable subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, Government and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages." 1 Fed. Stat. Ann. 1912 Supp., page 113.

The effect of this legislation, we submit, is to give to Congress exclusive right of regulation and control of the interstate business of telegraph companies. *Haskell Implement Company* v. *Postal Telegraph-Cable Company*, 96 Atl. 219; *Western Union* v. *Bank of Spencer*, 156 Pac. 1175; *Gardner* v. *Western Union*, 230 Fed. 405; *Bailey* v. *Western Union*, 156 Pac. 716 (Kan.); *Western Union* v. *Bailisoly*, 115 Miss.,—, 82 S. E. 91; *Western Union* v. *Banks*, 83 S. E. (Va.) 424; *Strauss Iron Company* v. *Western Union*, 23 District Court (Phila.) affirmed 59 Pa. Super. Ct. 122; *Western Union* v. *Johnson*, 171 S. W. (Ark.) 859; *Western Union* v. *Holder*, 174 S. W. (Ark.) 552; *Western Union* v. *Dant*, 42 Wash. L. Report 722; *Western Union* v. *Campton*, 169 S. W. 946; *Western Union* v. *Simpson*, 174 S. W. 232; *Western*

*Union* v. *Stuart,* 179 S. W. 813; *Western Union* v. *See,* 192 S. W. 70.

Division B of the court in *Western Union* v. *Bassett,* 71 So. 11 thus decided:

"The contract in question for the dispatch of this message was made May 14, 1909, and is controlled by the laws then in force. It was by an act of Congress approved June 18, 1910, that telegraph, telephone and such companies were included in the public service agencies under federal control volume 36, p. 544, U. S. Statutes at Large."

We now submit a number of cases decided by the state courts since the decision in the Dickerson case. Without an exception, these cases hold that Congress has taken over the regulation and control of the interstate business of telegraph companies to the exclusion of state control. *Western Union* v. *Schade,* decided March 3, 1917, by the Supreme Court of Tennessee. See 192 S. W. 924; *Durre* v. *Western Union,* 161 N. W. (Wis) 755; *Meadows* v. *Postal Telegraph Company* not reported (see suggestion of error, page 12 in *Dickerson case*); *Western Union* v. *Tobert E. Lee,* 192 S. W. (Ky.) 70; *Gardiner* v. *Western Union,* 231 Fed. (U. S. Supreme Court) 405; *Western Union* v. *Foster,* 113 N. E. (Mass.) 192; *Western Union* v. *Hawkins* 76 So.——. See reply brief or postal company in *Dickerson case* for full opinion. *Poor* v. *Western Union,* 196, S. W. 28.

We contend that Congress having exercised its power to regulate the interstate commerce of telegraph companies, appellee's liability is governed by federal law. and the decisions of the federal courts and not by the law as laid down in the state courts.

In the recent case of *Southern Express Company* v. *Byers,* reported in the advance sheets of the Lawyers Corporative Company of the date of May, 1, 1916, to be incorporated in Vol. 60 of the Law Edition, the court held that all rights and all liability together with the measure

of damages are to be determined by the federal courts in conformity of common-law principles as interpreted by the federal courts. *M., K. & T.* v. *Harriman,* 57 Law Ill. 690; *Jones* v. *Southern Express Company,* 61 So. 165; *Frisco Railroad Company* v. *Woodruff Mills,* 62 So. 171.

Third Contention. We contend that the stipulation against liability above a certain sum contained in the contract in this case is a valid stipulation, and appellant is therefore not entitled to recover damages above such sum. *Primrose* v. *Western Union,* 154 U. S. 1, 38 Law Ed. 883; *Bailey* v. *Western Union,* 156 Pac. 716; *Chicago, B. & O. Ry. Co.* v. *Miller,* 57 Law Ed. 323; *M., K. & T. R. Co.* v. *Harriman,* 57 Law Ed. 690; *K. C. Southern Ry. Co.* v. *Clark,* 57 Law Ed., 683; also see notes 44 L. R. A. (N. S.) 257, 50 L. R. A. (N. S.) 819.

We also contend, in this connection, that the reasonableness and validity of this stipulation in the contract is not a question for this court to decide but this question must be first raised before the interstate commerce commission. *Williams* v. *Western Union,* 203 Fed. 140; *Texas & Pacific* v. *Abilene Cotton Co.,* 51 Law Ed. 553; *B. & O. R. Co.* v. *United States,* 54 Law Ed. 292; *Texas & Pacific* v. *Mugg,* 50 Law Ed. 1011; *Interstate Commerce Commission* v. *Illinois Central,* 54 Law Ed. 280.

Summary. Briefly summarizing our argument thus far made, we have shown, supported by ample authorities: First, that Congress has taken over the regulation and control of the interstate business of telegraph companies to the exclusion of state regulations and control; second, that, this being true, the law as laid down in the federal courts, must govern this case; third, that under the law as laid down by the federal courts the stipulation against liability in this contract between appellee and appellant is valid and reasonable.

ETHRIDGE, J., delivered the opinion of the court.

Warren-Godwin Lumber Company, a corporation under the laws of the state of Mississippi engaged in manu-

facturing and selling lumber, addressed the following telegram to the D. J. Peterson Lumber Company, of Toledo, Ohio:

. "Offer three transit cars eight inch two shiplap' twenty-two dollars, answer quick.   Warren--Godwin Lumber Co."

This telegram was delivered to the postal Telegraph Company at Jackson, Miss., and the message fee paid but in transmitting the message to the D. J. Peterson Lumber Company the word "two" was left out, and made the telegram read "twenty dollars" instead of "twenty-two dollars."  On receipt of the message in this form that company replied as follows:

"Message received. Can book our order three transit cars eight inch two shiplap if good grade soda dipped or kiln dried at your price.  Billing to ourselves Derrick, Ills., care Clover Leaf."

The message sent from Jackson to the D. J. Peterson Lumber Company contained the stipulation on the back thereof providing that the company's liability for error in sending an unrepeated message would be limited to the amount paid for the transmission of the message.  The Warren-Godwin Lumber Company shipped the lumber as directed to the Peterson Lumber Company, and presented its bill for twenty-two dollars per thousand, but that company declined to pay the two dollars per thousand.  It is admitted that the amount of loss suffered by the plaintiff is one hundred twenty-five dollars and twenty-eight cents, and it is agreed that the telegraph company tendered back the amount paid for the transmission of the telegram.  The case was tried below before a special judge on agreed statement of facts, jury being waived, and the judge rendered judgment for the telegraph company.  The cause was decided before the decision by this court in the case of *Dickerson* v. *Western Union Telegraph Co.,* 114 Miss. 115, 74 So. 779, and the appellee admits that, unless the Dickerson Case is overruled, the appellant is entitled to judgment, but insists that the

Dickerson Case should be overruled. This court decided in the case of *Posttl Telegraph Co.* v. *Wells,* 82 Miss. 733, 35 So. 190, that the company could not contract against its own negligence, and that the stipulation on the back of a telegram undertaking to exempt the telegraph company from liability for its negligence in transmitting a message, though an unrepeated one, was invalid, and that the company is responsible for losses occasioned by its negligence in transmission. See also, *Western Union Telegraph Co.* v. *Goodbar,* 7 So. 214. We think these cases and the Dickerson Case rule this case, and decline to overrule the Dickerson Case.

It follows that the judgment should be reversed, and judgment here entered for one hundred twenty-five dollars and twenty-eight cents, which is accordingly done.

*Reversed, and judgment here.*

Stevens, J. (specially concurring). I concur in the judgment to be rendered in this case, but solely for the reason that *Dickerson* v. *Western Union Telegraph Co.,* 114 Miss. 115, 74 So. 779, unless overruled, controls the present case. I dissented from the opinion of the court in the Dickerson Case, and I still adhere to the views which I entertained at the time the Dickerson opinion was rendered. In fact, the splendid argument and the authorities collated in the brief of learned counsel for appellee only confirm my personal opinion on the legal questions involved in this as well as in the Dickerson Case.