WESTERN UNION TELEGRAPH CO. *v.* NORMAN.

[83 South. 465, In Banc.    No. 20710.]

1. COMMERCE. *Right and liabilities as to interstate telegram covered by federal law.*

A telegram sent from a point in one state to a point in another state is interstate commerce and in such case the right and liabilities in connection therewith depend upon the acts of congress, the contract contained on the telegraph blank, and the common-law principles accepted and enforced by the federal court.

2. TELEGRAPH COMPANY. *Not liable for punitive damages for acts of agent while engaged in interstate commerce.*

Punitive damages are not recoverable against a principal while engaged in interstate commerce unless the principal participated in the wrongful act of the agent, expressly or impliedly, by his conduct authorizing it or approving it either before or after it was committed.

3. STIPULATION LIMITING LIABILITY AS TO INTERSTATE COMMERCE VALID. Under the act of Congress, June 18, 1910, ch. 309, a telegraph company, which had filed rates with the interstate commerce commission, was not liable for delay in the transmission of a telegram for any amount in excess of the price of the message, where the telegram so stipulated.

APPEAL from the circuit court of Forest County. HON. ROBT. S. HALL, Judge.

Suit by M L. Norman against the Western Union *Telegraph Company* v. *Hawkins*, 73 So. 873, of the defendant appeals.

The facts are fully stated in the opinion of the court.

*J. B. Harris*, for appellant.

1. In answer to the first question we have to say that this court is bound by the interpretation placed by the supreme court of Alabama in the case of the

*Telegraph Company* v. *Hawkins,* 73 So. 873, of the Acts of Congress of July 18, 1910, unless this court is prepared to say that the Hawkins case is not the law of the state of Alabama as applied to contracts of this character. If it is the law of Alabama, then under the well-settled rules, it entered into and became a part of the contract as fully and completely as if expressly referred to and incorporated in its terms and is binding upon this court.

The question to be determined by this court is, what is the law of the state of Alabama, and that is not to be determined by the conclusion that this court might have reached in its interpretation of the statute or the conclusion which it has reached when applied to transactions and contracts arising in this state. See *Johnson* v. *The Western Union Telegraph Company,* 10 L. R. A. (N. S.), page 256, where is a full discussion on the subject.

We are certainly unable to see why the interpretation placed by the supreme court of Alabama upon the Act of Congress is not just as much the law of Alabama as the interpretation of that court placed upon one of its own statutes or one announcing its interpretation of the rules of the common law. The *lex loci contractus,* for the general rule see 9 Cyc., page 668; *Edwards* v. *Kearzey,* 96 U. S. 595, 24 L. Ed. 793.

We think we showed in our original brief that the rule is well settled in this state, See *Commercial Bank* v. *Auze,* 74 Miss. 609; *Brown Bros.* v. *Freeland & Murdock,* 74 Miss, 181; *Partee* v. *Silman,*44 Miss. 272; *Brown* v. *Nevitt,* 27 Miss. 801; *Bant* v. *Tarlton,* 23 Miss. 173.

We cite the following cases in which the telegraph companies were parties and where the claims for damage were similar to those in the case at bar, to show how general is the application of the rule. Alabama: *Western Union Tel. Co.* v. *Favish,* 71 So.

183; Arkansas: *Western Union Tel. Co.* v. *Woodard,* 105 S. W. 579; Connecticut: *Penobscot Fish Co.* v. *W. U. Tel. Co.,* 98 Atl. 341; Iowa: *Markley* v. *W. U. Tel. Co.,* 132 N. W. 37; Missouri: *Reed* v. *W. U. Tel. Co.,* 37 S. W. 904; North Carolina: *Johnson* v. *W. U. Tel. Co.,* 57 S. E. 122; Oklahoma: *Western Union Tel. Co.,* v. *Pratt,* 89 Pa. 237; Texas: *Western Union Telegraph Company* v. *Walker,* 74 S. W. 751; *Ligon* v. *Western Union Telegraph Company,* 102 S. W. 429; Wisconsin: *Fox* v. *Postal Tel-Cable Co.,* 120 N. W. 399; *Telegraph . Company* v. *Robins,* 109 Miss. 775; *Alexander* v. *Pullman Car Company,* 117 Miss. 348

Aside from the foregoing considerations and aside from the decision in the Dickerson case, I have never been able to understand why this court has apparently ignored the rule laid down in the case of the *Southern Express Company* v. *Ryers,* 240 U. S. 60, L. Ed. 825-827, in reference to damages for mental anguish.

In the case at bar the telegram was unquestionably interstate commerce, that has been settled too clearly by repeated decisions of the supreme court of the United States to admit of question. Being such, aside from any consideration of the application of the Act of Congress, the subject was governed by the principles of the common law as accepted and enforced by the federal court, and therefore, any instruction that damages for mental anguish could be recovered was erroneous. In none of the decisions which have been heretofore rendered by this court has it passed upon the Byers case and its application to matters strictly interstate commerce.

I have never been able to understand how this court in dealing with a Federal transaction that is to say, matters of interstate commerce purely, could refuse to apply a rule as laid down by the Supreme Court of the United State as govenring such transactions. The

telegram in this case was just as much interstate commerce as the shipment of casket and grave clothes in the
Byers case, and there certainly can be no reason, that I
can see, why. the right to recover for mental anguish
in one should be denied and given in the other.

If the subject-matter in this suit was an interstate
shipment would this court be governed by the rule
laid down in the Byers case? Manifestly under the
well settled and well recognized rule, the subject-
matter being one of interstate commerce, a matter of
Federal concern, this court would necessarily be governed by the decision of the supreme court of the United
States.

2. In the response to the second question, that ·
is to say, whether conceding that the interpretation of
the Alabama court of the Act of Congress as announced
in the Hawkins case is binding upon this court, can
punitive damages be recovered in an amount exceeding
that .stipulation in the contract. We have no hesitation in saying that the limitation in the contract is binding and enforceable, and damages in excess of the amount
limited cannot be recovered, whether these damages
are actual or exemplary. Why? It seems that the
conclusive answer is that this contract is to be governed by the Alabama Law, and conceding that the
Hawkins case announces the Alabama Law, the Alabama court has held distinctly in the Hawkins case
that the stipulations in the contract "are binding on the
sender of the message, State laws and decisions to
the contrary notwithstanding, and that the state courts
are without jurisdiction to declare the matter unreasonable unless so predetermined by the Interstate Commerce
Commission," and bases its decisions upon the numerous
cases cited in the opinion holding the same.

We must not be taken as conceding that this is a case
for punitive damages. We think, on the record, it is

utterly barren of any evidence of malice, fraud, or wilful wrong.

3. In answer to the third question propounded by the court, we have to say, first, that we cannot see by what process of reasoning this court will reach the conclusion that the Alabama Law does not apply to this contract for the reasons we have set forth above.

Under the law of Alabama this is the character of case in which damages for mental anguish cannot be recovered. See *Western Union Telegraph Company* v. *Sledge*, 153 Ala. 291, 45 So. 259, in that case it was expressly decided that damages for mental anguish will be *restricted to messages relating to sickness or death,* see *also Telegraph Company* v. *Westmoreland,* 151 *Ala. 319, 44 So. 382.* It was expressly held in the Sledge case that damages for mental anguish could not be recovered for the nondelivery of a telegram to meet the sender at a Railroad station where, as the result of the failure to transmit the message no actual tort was committed upon the plaintiff. The giving of this instruction violates the Alabama Law.

We must not be taken, however, as abandoning our position that as under the rule laid down in the Byers case, supra, that this transaction as being interstate commerce was governed by the Federal rule as to mental anguish, and that the rule must be applied throughout. But if mistaken in this, then certainly the Alabama Law as to mental anguish must govern, and damages for mental anguish of the character here claimed cannot be recovered in Alabama. We are citing below a number of cases from Alabama and elsewhere in which it has been held that in case of this character, damages for mental anguish cannot be recovered. Federal: *Stafford* v. *Western Union,* 73 Fed. 273; Alabama: *Western Union Telegraph Company* v. *Longe,* 41 So. 3965. (Semble); *Western Union Tel. Co.* v. *Pattie Westmoreland,* 44 So. 382; *Western Union Tel.*

*Co.* v. *Sledge,* 45 So. 59; *Western Union Tel. Co.* v. *Lucile Westmoreland,* 43 So. 790; Compare *W. U.* v. *Collins,* 47 So. 61 ($345 held excessive for "inconvenience and annoyance" of twenty-mile hack drive): Arkansas: *Western Union* v. *Hogue,* 94 S. W. 924; *Western Union* v. *Hanley,* 107 S. W. 1168; Indiana: *Western Union* v. *Bryant,* 46 N. E. 775 (Mental distress and nervous prostration); Mississippi:*Yazoo, etc., R. R.* v. *Foster,* 23 So. 581. (Recovery allowed for tolls and costs of conveyance walking two miles); North Carolina: *Williams* v. *Western Union,* 48 S. E. 559 (have Dr. R. meet me at W. Friday); Pennsylvania: *Allen* v. *Western Union* (Ct. of common pleas Erie Co. 1903, althought sender a woman and sick, arriving in the night time); South Carolina: *Jones* v. *Western Union,* 55 S. E. 318 (Meet me at Union this P. M.) (But see *Toale* v. *W. U.,* 57 S. E. 111, infra; *Dempsey* v. *W U.,* 58 S. E. 9, infra; *Todd* v. *W. U.,* 58 S. E. 433; *Kirby* v. *W. U.,* 58 S. E 10; Texas: *Western Union* v *Ragland,* 61 S. W. 421, (Recovery allowed for loss of time but not exposure); *W. U.* v. *Smith,* 76 Tex. 253, 13 S. W. 169 (No recovery for exposure); *W. U.* v. *Campbell,* 81 S. W. 580 (No recovery without proof that plaintiff could not have obtained a conveyance, and no recovery for catching a cold because of having no night dress).

4. In answer to the fourth injuiry we refer the court to our answer to the third injuiry and authorities therein set forth. See *Western Union Telegraph Company* v. *Miller,* 97 Miss. 225; *Railroad Company* v. *Prentice,* 147 U. S. 101, 37 L. Ed. 97; *Adams express Co.* v. *Croninger,* 226 U. S. 491, 33 Sup. Ct. 148 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; *K. C. S. R. Co.* v. *Carl,* 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; *H. E. & W. T. Ry. Co.* v. *U. S.,* 234 U. S. 342, 34 Sup. Ct. 432, 58 L. Ed. 1341; *So. Ry. Co.* v. *Prescott,* 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836.

We respectfully submit that the judgment of the court below should be reversed and the cause remanded.

*Tally & Mayson,* for appellees.

This is an action in tort and not on contract, as seems to be implied in the brief of learned counsel for appellant, under the well-settled law in this state, a violation of a general duty to the public is, regarded as determining the character of the action as oue founded in tort and not on contract; and sufficient to authorize the jury in awarding exemplary damages. *Heirn* v. *McCaughan et ux.,* 32 Miss. 660, 72 Am. Dec. 588; *New Orleans, Jackson, etc., R. R. Co.* v. *Hurst,* 36 Miss. 660, 74 Am. Dec. 786; *M & O. R. R. Co.* v. *Waters,* 74 Miss. 539, 41 So. 240.

We submit, however, that the suit was on tort but if it was in contract that neither the Federal nor the Alabama Rule would prevail in this state. Both have been expressly repudiated by our own court: *Dickerson* v. *Western Union Tel. Co.,* 114 Miss. 115, 74 So. 779; *Warren-Goodwin Lbr. Co.* v. *Postal Tel. Cable Co.* 116 Miss. 660, 72 So. 601; *Western Union Tel. Co.* v. *Teague et al.,* 117 Miss 407, 77 So. 302.

If the message in question is to be treated as an Alabama contract and that recovery can be only had in an action of contract, the doctrine coutended for by appellant cannot prevail. No breach of contract occurred in the state of Alabama. The Alabama rules and decisions would then he inapplicable. A state cannot impose by its statutes or decisions liability that would extend to conduct beyond the territorial limits of the state. *Dickerson* v. *Western Union Tel. Co.,* 114 Miss. 115, 74 So. 779.

Learned counsel have cited many cases where the Federal rules prevail. It may be true that some of the inferior Federal courts, showing that the alleged

courts of some of the states have wholly or partially adopted the so-called Federal rule, but we note with much satisfaction that it has never prevailed in this state, except for a very short time when the *Showers case*, 73 So. 276, was in force and which was overruled by the *Dickerson case, supra.*

The supreme court of that state recently had occasion to differentiate between actual and explemary damages. It appears to be a rule in that state that exemplary damages are such as are awarded for an indictable offense and that injuries to the person or estate of an individual, including mortification, humiliation and mental anguish, are all elements of actual damages. *Vincent* v. *Morgans La. Co.*, 74 So. 541.

Since then the appellant insisted that the question of damages be determined by the Louisiana Law, and threw down the gauntlet in that plea; the appellee accepted the challenge and expressed a willingness to have the damages other than the money paid out, determined adjudicated under the laws of that state. Thereupon the instruction in question was asked for and given by the court.

Though the message in question was an unrepeated message, the appellant could not stipuplate against its own negligence and the stipulation with reference to. unrepeated messages are absolutely invalid if the appellant was guilty of any negligence in transmission.

Complaint is also made by appellant that appellee asked for and obtained an instruction to the effect that the message in question was handled in such a manner as to evidence willfullness or gross negligence, that the jury in its discretion might impose punitive damages. That pronouncement of the law was and is correct. No rule is better settled in this state than that. *Western Union Tel, Co.* v. *Watson*, 82 Miss. 101; *Sternberger* v. *Western Union Tel. Co.*, 97 Miss. 884, 76 So. 738; Cooley on Torts (3L. Ed.), page 94

Ratification can be shown by a, retention in its employ · by the principal of the agent whose conduct is responsible for the act complained of. *Pullman Co. v. Alexander*, 117 Miss. 348, 78 So. 293.

We respectfully submit that the appellee has a very meritorious case and that, considering everything, the verdict of the jury was extremely small, and that the case should be affirmed.

Sykes, J., delivered the opinion of the court.

The appellee instituted suit ˙ in the circuit court of Forrest county against the appellant for the sum of thirty-five dollars as actual damages and one thousand, five hundred dollars punitive damages for the alleged negligent failure to properly transmit and promptly deliver a telegram sent by appellee from Akron, Ala., to his wife in Hattiesburg, ₁Miss., which reads as follows:

"Akron, Alabama, July 29th, 1916.
"Mrs. M. L. Norman, West Pine Street, Hattiesburg, Mississippi. Do not catch train for Tuscaloosa.
[Signed] M. L. Norman."

In the transmission of the message the agents of the appellant company changed the name of the addressee to ₁Mrs. M. L. German. Because of this mistake the message was not delivered to Mrs. Norman and in fact was not delivered at all until several days later, when the appellee went to the telegraph office, and, after some discussion with the agent of the appellant at Hattiesburg, the message was then delivered to him. Mrs. Norman made the trip to Tuscaloosa, and the actual ·expenses of .this trip amounted to thirty-five dollars which were paid by the appellee. In another suit Mrs. Norman recovered the actual damages sustained by her because of this mistake.

There were a number of special pleas filed in this case, and it seems from the record that demurrers were filed and sustained to all of these special pleas. The

second plea of the appellant company alleged, in sub-
stance, that the message in question was delivered to
and accepted by the appellant company subject to the
terms of a certain contract in writing, a copy of
which is attached and made a part of this plea; that
one of these terms and conditions is that the company
should not be liable for mistakes or delays in the trans-
mission or delivery or for nondelivery of any unre-
peated message beyond the amount received for send-
ing the same, and that the message in this case was
an unrepeated message; that by the Act of Congress
approved June 18, 1910 (36 Stat. 539, chapter 309)
the Congress of the United States assumed charge of
regulating the field of interstate communication by
telegraph, and conferred upon the Interstate Commerce
Commission full power over the rates, charges, and
practices of telegraph companies engaged in interstate
commerce with reference to such interstate commerce,
and conferred on the Interstate Commerce Commission
power to approve, alter, or acquiesce in existing rates
and classifications; that the Interstate Commerce Com
mission prior to the filing of the message in question
had approved the rates of the appellant company,
and for these reasons that the stipulations in the
contract, subject to which the message was accepted
which limited the defendant's liability to the price of
the message, were reasonable, and valid and binding.

The record does not show that a demurrer was filed
to this plea, neither does it show that issue was taken
upon it, but from the entire record it is apparent that
the case was tried upon the assumption that this plea
was insufficient as a matter of law.    In fact at the
time of the trial of the case of *Dickerson* v. *Western
Union Tel. Co.*, 114 Miss. 115, 74 So. 779, and *Warren-
Godwin Lumber Co.* v. *Postal Tel. & Cable Co.*, 116
Miss. 660, 77 So. 601, the latest announcements of this
court upon this question, expressly held that these

stipulations appearing upon the back of the telegraph blanks were unreasonable and void, and the learned circuit judge followed the ruling as announced in thesce two cases in so holding in this case. The question was further submitted to the jury as to whether or not punitive damages could be recovered by the plaintiff. The jury rendered a verdict in favor of the plaintiff in the court below for four hundred and fifty dollars from which judgment this appeal is prosecuted.

This court held in the case of *Western Union Tel. Co.* v. *Showers,* 112 Miss. 411, 73 So. 276, that Congress by the act of June 18, 1910, had taken possession of the field of interstate commerce by telegraph to the exclusion of the power of the state to legislate with reference thereto. This decision was subsequently overruled by the *Dickerson case supra.* The question decided in the case of *Warren-Godwin Lumber Company, supra,* is the indential question now before us, namely, whether or not liability of the telegraph company for a negligent error in sending an unrepeated message would be limited to the amount paid for the transmission of the message in accordance with the stipulation contained on the telegram. This court, following its decision in the Dickerson Case, held that this stipulation was void. This Warren-Godwin Lumber Co. Case has been lately decided by the supreme court of the United States, and the judgment of this court is by it reversed. 250 U. S. —, 40 Sup. Ct. 69, 64 L. Ed. —. In this opinion the supreme court of the United Statesc holds that the act of 1910 "was intended to control telegraph companies by the Act to Regulate Commerce," and that this act subjects telegraph companies "as to their interstate business to the rule of equality and uniformity of rates which it was manifestly the dominant purpose of the Act of Regulate Commerce to establish, a purpose which would be wholly destroyed if . . . the validity of contracts made by telegraph

companies as to their interstate commerce business continued to be subject to the control of divergent, and it may be conflicting, local laws." This opinion holds that the stipulation in the contract above referred to is a valid and binding one. *Primrose* v. *Western Union Tel. Co.*, 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883.

In the Primrose Case "it was held that such a contract was not one exempting the company from liability for its negligence, but was merely a reasonable condition, appropriately adjusting the charge for the services rendered to the duty and responsibiity exacted for its performance.

This decision further holds that under the Act to Regulate Commerce above referred to telegraph companies are empowered "to establish reasonable rates, subject to the control which the act . . . exerted;" "that the power thus given, limited, of course, by such control, carried with it the primary authority to provide a rate for unrepeated telegrams and the right to fix a reasonable limitation of responsibility where such rate was charged, since, as pointed out in the Primrose Case, the right to contract on such subject was embraced within the grant of the primary rate-making power."

Since the telegram in this case was interstate commerce, the rights and liabilities in connection therewith depend upon the acts of Congress, the contract contained on the telegraph blank (if such be the case), and the common-law principles accepted and enforced by the federal courts. *Southern Express Co.* v. *Byers*, 240 U. S. 612, 36 Sup. Ct. 410, 60 L. Ed. 825, L. R. A. 1917A, 197.

Whether or not the plaintiff is entitled to recover punitive damages in this case is to be governed by the law announced by the United States Supreme Court. *Byers' Case, supra.* In the case of *Railroad Co.* v. *Prentice*, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97, the leading case of that court upon the sub-

ject of the recovery of punitive damages, it is held that punitive damages are not recoverable against the principal unless the principal praticipated in the wrongful act of the agent, expressly or impliedly, by his conduct authorizing it or approving it, either before or after it was committed. The testimony in the case at bar shows that the telegram was correctly transmitted to the New Orleans relay office of the telegraph company, that it was incorrectly transmitted from New Orleans to Hattiesburg, that the agent at Hattiesburg requested the New Orleans agent to know if the addressee was correctly named, and that the New Orleans office stated that she was. Even if we assume that this conduct of the New Orleans agent showed a reckless disregard of the rights of the appellee, at the same time the testimony fails to show that the principal participated in the wrongful act, expressly or impliedly, by his conduct authorizing it or approving it, either before or after it was committed.

It follows that the special plea referred to is a good plea as a matter of law. The cases of *Dickerson* v. *Western Union Tel. Co.*, 114 Miss. 115, 74 So. 779, and *Warren-Godwin Lumber Co.* v. *Postal Tel. & Cable Co.*, 116 Miss. 660, 77 So. 601, or such parts of them as are in conflict with this opinion, are hereby expressly overruled.

*Reversed and remanded.*